proceed then we're here on the government's motion for stay pending appeal. I'd note that we have for and maybe counsel for the government can just address this when it's his turn to speak. We understand that you're invoking rule 27-1 sub 3 as opposed to 27-3. So what I in other words not an emergency motion, but you have requested expedited hearing and a special panel has been drawn by the chief judge for that reason. What we don't know because the briefing doesn't tell us is, is there a specific reason that the ruling is requested by August 4. With that, I don't have any other questions that I wanted to highlight up front and we're ready to hear your argument. Thank you, Your Honor. May it please the court. Yakov Roth on behalf of defendants. I'm hoping to reserve about three minutes for rebuttal. I'll watch the clock for that purpose. Just to start with with Your Honor's question. No, there's no particular magic about August 4th. We were trying to just be reasonable about, you know, we all the money is being drawn down every day. So it's a situation where there is we view it as irreparable harm. But because we took a little bit longer to move, we didn't want to jam up the court or opposing counsel. So we tried to pick something that was a reasonable date in light of that. Thank you for that clarification. So, Your Honors, we are asking the court to stay the injunction because it rests on errors of law and because the balance of harms favors a stay. And the district court found that plaintiffs were likely to succeed on three claims. A First Amendment claim, a statutory claim limited to the NEH and an APA arbitrary and capricious claim. I'd like to walk through each of those and explain why we think the district court was wrong as to each of them. With respect to the First Amendment, the district court misunderstood the controlling principle of law. The government generally gets to decide what it wants to pay for and what it does not want to pay for. And that alone is not a First Amendment violation. Now, what the government cannot do is use those subsidies to try to coerce or suppress speech outside the context of the funded program. And the Supreme Court explained this dichotomy in the USAID case back in 2013. The government can say we only want to pay for X, we don't want to pay for Y. The government cannot say we're not going to give you money for X if you say Y, you know, that's unrelated to the program we're paying for. But respectfully, we are on the constitutional side of that line here. All that happened in this case is that these agencies decided they did not want to pay for research on particular topics going forward and therefore terminated grants related to those topics. That alone is a question here, counsel, forgive me for interrupting, but I have a question that goes right to this point. So if I could, the McDonald Declaration in paragraph 20 says the NEH's authorizing statute does not set forth any prohibition or limitation on the sole discretion of NEH chairperson to terminate or rescind grants, I'm not aware of any such limitation in the law or the regulation. So of course, my question has to do with, is it the government's contention that these grants could have been terminated on the basis of viewpoint? It depends a little bit on what your honor means by viewpoint. So I do think the government can say, you know, we want to pay for research supporting Proposition A and we don't want to fund research supporting Proposition not A. I do think that type of discrimination is permissible when all we're talking about is the government's own funding of the speech. What the government could not do is say, for example, you know, we saw that so-and-so you have a grant to do research on, you know, cancer, but we noticed that you were outside protesting against the president last week, so we're going to pull that grant. That would be leveraging the subsidy for a First Amendment problematic reason, and that would run afoul, I think, of principles articulated in the USAID case and other Supreme Court grants. But we don't have anything like that here. All we have is the agencies have decided these are topics they don't want to pay for anymore. They don't want research on these topics. Maybe a good decision, maybe a bad decision, but it's not a First Amendment violation to make that decision. Because you've, can I just, if I could follow up on that, you're viewing these key word searches as necessarily identifying programs? In other words, it strikes me that DEI could be viewed as a programmatic label and description of a content. It also, opposing counsel certainly argues that it is necessarily directional and it expresses a viewpoint. Do you draw that distinction? I view it as more akin to content than viewpoint, but I also don't think it legally matters. You know, we give the example in the brief, for example, of, you know, if the government says we want to fund speech that's against drug use, we don't have to fund speech that's in favor of drug use. The government is allowed to have a viewpoint and the government is allowed to say we're going to support programs and grants that align with the government's viewpoint. Again, that, as long as it's limited to, here's what we're going to pay for, here's what we're not going to pay for, relating to the actual program or grant at issue, that does not pose a First Amendment violation. Does it make a difference, does it make a difference, counsel, as to the timing of the decision by the government? So, for example, you know, I hear you when you're talking about sort of the government's decision-making authority in the grant-making process. So, we have cases that clearly say when you are deciding to, the government is deciding to make a grant in the first instance, it has broad discretion to decide what to fund and not fund it. Is there any difference if there is a decision to terminate a grant mid-grant cycle, not even during a renewal, but just as it was done in this case? Your Honor, I don't think there would be a First Amendment difference between those things. I think if there's a difference between those two, it could relate to the grant terms and whether it's consistent with the contract. So, it may be that the government is not entitled to terminate a grant mid-stream. That would be a contract breach claim against the government. But from a First Amendment standpoint, I don't view any, there as being any principal distinction between a decision at the outset that we don't want to pay for this and a decision to... Your Honor, let me, okay, so I understand what you're saying. Here, I think the plaintiffs are arguing the fact that this occurred so closely in time and in direct reference to the executive order relating to very specific viewpoints, the dangerous, quote-unquote, that sort of bring the timing and the viewpoint sort of together to say that this was in fact discrimination based on a particular viewpoint or content of the grants? Your Honor, we're not, we don't contest that the decision-making was triggered by and certainly informed by the executive orders. We just don't think there's any First Amendment problem with that. The executive orders represent the administration and the president's views about what should be, what the policies of the agency should be, and what the priorities of the agencies should be, and the types of programs they should and should not be funding. And the First Amendment doesn't limit the government's ability to decide, you know, we don't want to pay for this project about Mark Twain anymore. We'd rather spend it on something else, as long as it's consistent with the statute and any other applicable sources of law. But the First Amendment itself doesn't prohibit that. That's the Finley case from the Supreme Court, Rust and Regan, and we think that the district court misunderstood that key distinction. Counsel, following up. Hold on, let me just ask a question to Judge Kristen, then we can move on. I just have one question about this. Is it your view that there's nothing expressive in the grant application? No, I don't think we're taking that position. I don't think we need to take the position that it's not expressive. It's just that the government's decision whether to fund it or not fund it is not punishing the speech in a constitutionally prescribed way. That's the government's decision about how to spend its money. And as long again, as long as it didn't, let me ask you, didn't the government make that decision at the outset when it approved the application? Yes, absolutely. The government made the decision at the outset. We want to pay for this. And then if you take the poor or the core, her application, it was funded over two and a half years ago. That's right. So the government made the decision. We want to pay for this. And then the government changed its mind and said, we no longer want to pay for this going forward. There was no clawback of the old money. It was just going to keep paying for this. But as Judge DeSign, as Judge Kristen were indicating, I mean, you seem to have taken this action based on the viewpoint that is expressed in the application. And you put the thumb on that and said, we don't want to fund this anymore. Right. So I guess what I would say, if at the outset the government was free to say, you know, we read your grant application. We like this idea. We want to pay for it. I don't see why the first amendment then prohibits the government when there's been a change of administration from saying, we took a look at it. We don't like this anymore and we don't want to pay for it. So we're not going to keep paying for it. If you can do one, I'm not sure why you can't do the other. Again, that's because you're viewing. I think I just want to push back on this to follow up on Piazza's question. The it in your question under the Russ versus Sullivan line of cases is an entire program. And I think that's very well established and you've briefed that really well. But what we're trying to explore is whether or not it is the government's position that the word searches or the way these grants were terminated may also be reflective of viewpoint discrimination. So the problem is for me is that there's a distinction between DEI as a program and DEI as a viewpoint. And if we just look at the dictionary definition, that tells us that DEI is used in a way that is necessarily directional. It is a general view that our history of discrimination and exclusion of certain classes is undesirable and ought not continue. So if you just take that from the dictionary as a premise, that there's a difference between a program and a view, I'm not sure how Russ versus Sullivan helps you. Well, again, your honor, let's let's let's take accept the premise of your honor's question that it is a viewpoint that we're talking about here. That means when the government decided to pay for these grants a number of years ago, they were saying we like this viewpoint. We want to support it with our government money. So here's some funds to advance your project because we like the viewpoint. Now the government's position has changed and the government's position is we don't think this is a good use of government money, so we no longer want to pay for it. The viewpoint, one way or the other, does not restrict the government from making funding decisions. I think that is clear from Finley that you can take into account content, you can take into account viewpoint. The government doesn't have to fund both sides equally as long as it's using its own funds and it's not trying to go beyond the scope of whatever the thing is that is being paid for here, these grant applications. I'm going to pivot a little bit because I think this is a very interesting case and the First Amendment issue certainly is, but if we could pivot a bit to Judge Desai's question going back to what difference does it make that these were made midpoint and Judge Piazza's example is, I think, a very good one. Dr. Thakur's research, she was about, she's within, I think it's a three-year grant and she was in just a few within a few months of concluding it. For the purposes of the APA, the Supreme Court has been very clear, I think, that reliance interests have to be taken into account. So what about that? Is there evidence in the record that reliance interests were taken into account? No, there's no specific evidence of that and so let me address the APA claim because Your Honor's question goes directly to the APA claim and our position on the APA claim is really quite simple, which is that the APA does not allow claims that a breach or termination of a contract was arbitrary and capricious because those are disguised contract claims that must be brought in the Court of Federal Claims and therefore APA relief on those claims is impliedly precluded. We think, excuse me, we think the Supreme Court's stay order in Department of Education is controlling on that point and I know it was not. I have a question on this because I think there is a critical distinction and I think the plaintiffs point this out which is that in Department of Ed, the plaintiffs were parties to the contract and here the plaintiffs are not parties to the contract and so how can they bring a contract-based claim if they are not parties to the contract? Thank you, that is absolutely a distinction, Your Honor. I was trying to peel apart the two questions because I think it's analytically, I think there's two separate questions. Is it the type of claim that is a disguised contract claim that is subject to the implied preclusion and then if yes, so in other words, if the University of California could not bring this claim in Federal Court, it would have to go to the Claims Court. Does it matter that the plaintiffs here are not parties to the contract and therefore might not be able to go to the Claims Court? I was hoping to take them in that order but I'll be happy to jump to the second one and say assuming that the University of California could not bring this claim here under the logic of Department of Education, we don't think it makes any difference that these plaintiffs are not able to seek relief in the Claims Court because being a step further removed from the contractual relationship doesn't mean you get additional rights or that these APA rights spring up. So you make this argument in your motion, your state motion, I think it's at page 15 where you say that they have these additional rights that this proceeding, allowing these plaintiffs to proceed with their claims here would give them greater rights than parties to contracts would have but I'm not sure I really understand that because parties or non-parties can bring claims in Federal Court based on statutory or constitutional claims that they have but parties to a contract have the additional ability to bring claims in the Federal Claims Court. So I'm not understanding your argument that this somehow gives them greater rights when in fact they are limited in what they can bring in terms of contract-based claims in the Federal Court. Your Honor, here's how we see it. The way we see it, the Tucker Act creates a regime for contract claims with the Federal Government and it has limitations so not everybody can file a claim and there are certain remedies you can't get in the Claims Court and there are all sorts of other restrictions. The consequence of that scheme though is that the APA impliedly precludes relief that you could get or could not get on those claims in the Claims Court and so for example you can't get an injunction in Claims Court and so parties have come to Federal Court and said well I only want an injunction I can't get that in Claims Court I should be able to get it here. This court expressly rejected that argument in North Star Alaska and said no the fact that you can't get that relief in Claims Court means it's impliedly precluded under the APA you can't come here and get it either and so I think it's exactly the same dynamic with respect to the party principle. If the rule in Claims Court is you've got to be in privity with the contract to sue and by the way there are exceptions to that. Counsel, the rules you're talking about are all premised on the assumption that this is a contract claim. Right. They'd have to be I think what you're arguing is that they'd have to be a party to the contract or a third party beneficiary if they were bringing a contract claim but there's a size point they're not bringing a contract claim. They're bringing claims for well this class is bringing a claim to pursue the right to be free from arbitrary and capricious agency action. Right so that takes us back to the first question the predicate question. Are these really disguised contract claims? Why do you think they are? So let me give you three reasons why I think they are your honor. Number one it's exactly the same claims as were an issue in Department of Education. Those are grant terminations. In Judge Desai that is distinguishable sir because in Department of Education the Supreme Court talked about the relief granted by the district court in that case which included payments passed due on the contract. The court was enforcing the contract. That's not what these folks are looking for here. Your honor if you look at if you look at Department of Education if you look at the district court and the first circuit decision in that case it was exactly the same. They were saying these terminations of grants are arbitrary and capricious. We want an injunction to restore the grants going forward. That's what the district court granted. That's what the first circuit said was permissible and the Supreme Court said no the government is likely to succeed on its jurisdictional objection that this is really a contract claim that has to be brought in. I'm trying to call your attention to what the Supreme Court told us and you're not responding to that if you could please. The Supreme Court referred to the type of relief entered by the court by the lower court and that included payments for past dues. Forgive me I didn't mean to talk over you that that included payments past due under the contract. Can you can you help me sort that out? Your honor it was both so it was the same dynamic as here. The contract the grants were terminated and they said bring back the grants and that means you've got to pay for whatever you know the last three weeks and going forward indefinitely and that was the relief that they got there and that was the relief that was requested here an injunction to restore the grants to nullify the termination of the grants. I will grant you that the language in the Supreme Court decision Department of Education may be broad enough to include what you're arguing. I think the difficulty here is that there's very little reasoning and so we're having to interpret what the Supreme Court has said in this case which is all one line that says the Tucker Act grants the court of federal claims jurisdiction over suits based on any express or implied contract with the United States and that's all it says and I understand your argument but if we're trying to interpret what that means and we know that in that case the parties were in fact parties to the contract and here they're not why is that distinction not one that is important to make especially because if we agree with your argument there is no way that these plaintiffs can seek the relief that they're asking for. So I do think that that distinction can be drawn your honor and that's my prior answer to your earlier question that I that about how the limitations on who can sue in the claims court should be viewed as impliedly precluding the same way the limitations on remedies in the claim court should be construed as impliedly precluding broader APA relief. But this is a little different well forgive me can I just clarify that's a little different than what I thought you were arguing but I just asked you straight up is it the government's position that these claims could be brought in the in the court of federal claims? They can bring them they might lose and I haven't fully analyzed that because it's complicated. That's a nice lawyer's way of saying they can't bring them. Well I just don't see a path counsel this is your opportunity if I'm missing it I don't see a path how could they do that? Oh well the the the claims court this is all sort of uh case law in the federal circuit in the claims court about when non-parties can sue and there are limited situations I'm not saying they can here I don't want to make that representation I think probably they can't. I think your argument is that that the universities who are the contracting parties can bring the claim and because there is somebody out there in the universe who can bring these claims that's sufficient. Correct the universities definitely as the counterparties can bring a claim premised on the breach or termination of the contract in the claims court and there's certain you know again they may win or lose and they may be entitled to one remedy or another but that sort of takes all of this out of the traditional APA cause of action under the principles of Department of Education. Now I don't want to solely rely on the Supreme Court's order because I understand that it didn't have a lot of reasoning but let me explain why I think it's entirely correct and it's a point that the DC circuit made in Megapulse you know 40 years ago footnote 34 of Megapulse which is really just a simple one if a plaintiff could evade the its limitations on relief and other restrictions by recharacterizing a breach or termination of a contract as arbitrary and capricious agency action it would completely undermine the point of having this channeling regime because there is no breach or termination that you could not come into court and say it was also arbitrary they're going to overlap all the time and that's the APA should not be viewed as conferring an independent substantive right on a party to a contract to avoid arbitrary and capricious action it should be dictated by the contract terms and I'd like to just offer one hypothetical if I can to try to illustrate the point which is you know there are many contracts that say if a party wants to terminate you know use the form in appendix B to the contract and it might just be a form letter that says I terminate send it to this person if the party did that and the counterparty came to court and said well this is arbitrary and capricious it's a form letter there's no reasoning there's no explanation of course we would say no given the way this contract is written that was perfectly reasonable way to terminate it we wouldn't layer on top of that additional arbitrary and capricious protections from the APA and I think what that's can I turn you to another topic so you're running short on and judge christen can sort of you know manage that but I do have a couple of questions I want to make sure I ask you before you sit down and this really goes to the irreparable harm arguments so why has the government moved to stay the injunction as to the EPA and NEH grants but not the NSF grants it's just because the NSF doesn't want to have interim relief they've having reinstated these contracts they'd rather not potentially have to cancel them again and restore them again they just want to wait for the why would two of the agencies the EPA and NEH irreparably harmed pending appeal but not the NSF I mean I think they're all irreparably harmed just only two of them want to press the point and we're not going to bother the court with something the agency doesn't want the irreparable harm is that the money is being spent and that's irreparable for the same reasons as department of education okay so so so let me and to your last point here what evidence in the record establishes that the grants will not be repaid if the federal government ultimately prevails your honor we're not aware of any mechanism that would allow recoupment of money so in department of education that this was an uncontested point and in fact I wouldn't be no way for the money to be repaid and they had no intentions of doing so if if the government ultimately prevailed that's not the case here correct your honor here I think it's actually a fortiori because these plaintiffs aren't the ones getting the money it's the university it's not even a party so we can't possibly get any representation from the university that don't worry we'll pay it back if we lose at the end of the case because they're not even here aren't there certain I thought I read in the briefs that there are certain um uh procedures that have to be followed when a grant comes to an end like there's close up audits close outs that's right reports and I assume that if money was miss you know allegedly misspent or not properly spent the government could make a claim for it your honor right right but I think if the court reinstates as it did below the court ordered reinstatement of the grants if we win this case in a year I don't think we're going to be able to go and say well all the money we paid you in the interim was wrongly spent I mean there was a court order in place at that time that said this grant is live so we had an obligation to pay that money and they were entitled to spend it well I guess at the end if there's a judgment in favor of the government then what happens to that argument that well the the final judgment would be no injunction you know the injunction gets dissolved going forward but I don't think that would entitle us to recoup oh look if this court wants to say that at the end of the case we're entitled to claw back all the money from University of California if we win the case that does solve the problem I haven't really looked at the regulations or the policy statements that relate to all of that but I remember seeing something in briefs about methods that have to be followed when grants terminate or when you when the government ends a grant midway there are yes your honor is correct there are closeout procedures and it and they uh allow you to even after it's terminated they allow the grantee to claim certain money for winding up the program and so on but there's nothing in those that says you know if get an injunction that requires us paying the money we can come back and claw it back again if the score wants to say otherwise we'll be happy with that but that's not my understanding of the law I see I'm over time but we're going to give you a little bit more I'm not quite done uh can I just ask for clarification is your is your channeling argument limited to the form termination class yes for purposes of the same motion yes we've only raised it as the form termination class have not argued in this motion that the first amendment claims are subject to the channeling okay I appreciate that clarification if my colleagues don't have any other questions at this point we'll um hear from opposing counsel and we'll I'll put a few minutes on the clock for you to come back so we took up quite a bit of your time with our questions thank you too bad you whenever you're ready thank you good morning may it please the court my name is Erwin Chemerinsky and I represent the plaintiffs this is a case that posed a question of profound importance and the president cut off hundreds of millions of dollars of grants to researchers without any explanation without any procedures it means dislikes the ideas that are being presented as I listened to the government there were two important omissions first there was no mention of the standard of appellate review it's clearly established that a district court's injunction should be stayed only in extraordinary circumstances when the government is a heavy burden of proof and ultimately to overturn a preliminary injunction requires finding of an abusive discretion and second there's no mention by the government lawyer of the irreparable harm to the plaintiffs in cutting off these grants when the grants are cut off research is stopped labs have to be closed postdocs and graduate students leave public papers are not published damages years from now cannot remedy that injury and in terms of the harm to the government if the money is spent it's spent in the way that congress intended and also as judge priors pointed out both under the federal statutes and under the federal regulations if the government's entitled the money back there are ways to get it there are jurisdictional issues and merits issues i'll start with the jurisdictional issue and that's the government's claim that there's no jurisdiction in federal court the jurisdiction is in the court of claims because the tucker act this is precluded by on point ninth circuit precedents in united states aeronautical corporation versus united states air force 80 f third at 10 26 this court said that if a cause of action arises to the constitution or a federal statute then the federal district court has jurisdiction this court reaffirmed this on may 14th in its decision of community legal services for the united states department of health and human services there at 137 f fourth at page 937 to 940 the court reaffirmed the united states air force case so you have so when the government says well really what they're at what they're really doing here is just disguising all these claims because really what they've got here is a breach of contract claim and what they're really doing is they're trying to get payment of money how does the argument you make with respect to constitutional claims fit in with that or negate that your honor when there's a constitutional claim this court's presently clear that the district court has jurisdiction and it's important it goes to judge's size question in department of education versus california there was no constitutional claim in fact in the megapulse case that the government cites the dc circuit went on to say if it's a constitutional claim or a statutory claim the federal court has jurisdiction and indeed there would not be jurisdiction in any other court than the federal district court for the reasons that were pointed out since these individuals are not party to the contract they can't go to the federal court of claims if they can't go to the federal district court they can't go anywhere and the united states supreme court has been emphatic and say that should always be assumed that some court has jurisdiction unless congress has clearly precluded it department of education versus california is distinguishable on many grounds if the plaintiffs didn't have a constitutional claim would we be more like this in case be more like department of education no your honor because would still be a statutory claim in terms of department of education it's important to note there that the parties to the contract were before the supreme court they could have gone to the court of claims here the parties are not the plaintiffs in this suit if you say this has to go to court of claims then no court will have jurisdiction also what do you say to the have the ability to bring their contract claims before the federal claims court why isn't that it's clear the fact that some other party might be able to bring a lawsuit isn't a basis for denying jurisdiction to a plaintiff that has standing that has injuries here causation and redressability i know of no case that says because one party might be able to bring a suit a form then others are denied the remedy entirely so if the university chooses not to bring a suit then what you have is grave injury to these plaintiffs caused by the government that we remedy by a favorable court decision but no forum to hear it and to adjust address judge pies's question in department of education versus california the supreme court specifically said the fact that the relief would cause money to be paid doesn't in itself require that it go to the claims and there the supreme court cited bowen versus massachusetts for that opposition what about the argument opposing council makes that every breach of contract could be repackaged as a claim that the agency action was arbitrary and capricious your honor there's no basis for that there would have to be a showing the particular instance that the agency action is arbitrary capricious and abusive discretion as i'll discuss with regard to the administrative procedures act here the supreme court has been very specific about what's required and we allege in the district court found that those are met there's no basis for the government's assertion that every breach of contract could be re-characterized in that way but again i remind this court under binding ninth circuit precedent when a cause of action arises from the constitution or a statute and apia is a statute the district court has jurisdiction can we turn to the first amendment oh forgive me judges i'll go right ahead i have one more question about the reviewability issue um the government really doesn't address the finding that the district court made that the record is really undeveloped with respect to the epa's um the the judicial review of the challenge epa decision and i'm curious to know your thoughts as to what we should do with a undeveloped record and and sort of deciding the merits of the reviewability argument when at least as to some of these grants there's nothing in the record to talk about the reviewability issue truth as to the constitutional claims there is ample evidence within the record to show that the bands were cut off as you had indicated precisely because of the disagreement with the um and with regard to the apa claim the fact that there's no nothing in the record that the government gave no reasons for its decision shows exactly why it's arbitrary capricious and abuse of discretion but didn't the government argued as i recall that if you look at the executive orders and some of the content in the form letters that one can discern the reasons what do you do with that what do we do with that your honor this goes to the administrative procedures act claim let me then address it first before getting to the first amendment claim and here it's important to remember what the standard is it has to be that the government action is reasonable and reasonable explained right and the supreme court has said if the government is going to change its policy it has to explain the basis for it and additionally as judge kristin pointed out the supreme court has been clear that reliance interests must be taken into account and judge priors when you look at the termination letters they didn't do that they were form letters that simply said you're not consistent with priorities and i think here too there's a circuit case on point the northwest environmental defense center versus donnaville power specifically addresses this and says a conclusion that priorities have changed isn't sufficient to meet the requirements of the administrative procedures act there seems to me to be another layer here and maybe you could address it there's the executive orders there was an admission by opposing council that these terminations were an attempt to execute those orders but but of course what what terminated the termination decisions were made by the agency heads if i'm not mistaken and we have two declarations in the record from one agency head mr mcdonald's there's this statement that he did indeed seek to in fact i think his first cut was a dei word search and and a word search for other terms that came straight from the executive order um and then from epa it's quite to the contrary the daniel coogan declaration says that um there was a grant by grant review process and we looked at grant titles and project description and specifically says that those decisions were made in independent from any executive order so um it seems to me there's an there and certainly there's a new reason being announced that wasn't in the termination letters the district court noted that and and then and then she noted that this left the public guessing if there's a permissible reason and an impermissible reason what do we do with that your honor what i think is important here is that in both instances it was based on keyword searches and then we can talk about why that's arbitrary with regard to the epa if you look at the coogan declaration it's docket 43 to paragraph 8 that says it was keyword searches with regard to the national endowment of humanities it's michael mcdonald declaration docket 46 in paragraph 9 we would argue that the keyword searches are inherently arbitrary because when you just look for a word without any context for the word obviously you're going to make huge mistakes also your honor the forum letters were used and reform letters are used for termination that fails the requirement that the decision be reasonably explained and that's what makes this arbitrary and capricious and to go back to your earlier question in none of these was their accounting for the reliance interest of the grant recipients in the united states supreme court made it clear the department of homeland security for subregions here is california that there has to be taken into account of the reliance interest it's all of this that makes it arbitrary capricious abuse of discretion with regard to the forum termination class action could you talk about another point that you made along these lines that another problem that you argue is that there it doesn't seem that in implementing that there's necessarily the connection between these particular grants and the objectives indicated in the executive order and i i'm wondering if you could give an example that would maybe illustrate uh what you mean there sure take the name plaintiff in this class actions to dr thakur she's engaged in research about the effects of fire with regard to individuals and especially minority individuals it's hard to see any connection between what the epa was trying to do under the executive order in terminating these grants and rather this also goes to irreparable harm as her declaration points out there are three papers that she wasn't able to publish because of the termination of the grants and on the on the first amendment claims um mr chermansky i know you're going to turn to that but i i'm just going to come out and ask you this as we're talking about this issue of keyword searches and the use of keyword searches to determine which grants to terminate does it hurt or help your claims that non-dei related grants were sort of swept in um and terminated by the agencies based on this sort of sloppy process that they used um because it seems to me that for for to have the first amendment claim you're saying that there was a viewpoint discrimination but there's a concession that some of these grants actually don't reflect the viewpoint or content that you're claiming was censored or discriminated against so what do we do with the fact that there may be for example a grant relating to biodiversity that has nothing to do with this dangerous ideas or notions that are in the executive order but because there was a sloppy word search used the grants were terminated your honor that shows exactly why we should prevail why the district court should be affirmed with regard to the ata claim because what you've just described is truly arbitrary and capricious decision making now with regard to those that were terminated on the basis of the content there you have viewpoint discrimination and the failure of the government is in characterizing the issue the issue is can the president terminate spending that's been appropriated by congress because the president disfavors an idea and what i think is very important is the government cites to not a single case that involves the president terminating funds appropriated by congress because the president disagreeing with the idea every case they cite involves congress passing a statute create a program either have government speech or to fund private speakers that's quite different than this situation and if you look at the language from the cases that they cite and from the ninth circuit you see the flaw in their argument the government lawyer quotes nea versus finley but if you look at 524 us 587 the supreme court says quote the government cannot leverage its power towards subsidies into a penalty of disapproval i think we're losing can i ask you to pause where you're breaking up and i just want to make sure that we've got i'm sorry we don't well it's not it's not your fault i just want to make can everyone um i can hear you i think you're fine but you need to kind of run roll back about a minute in your argument because i've lost a bit okay um just to be clear my initial answer to judge de sai was that it shows how arbitrary and capricious the government decision making is that they were using keywords and brought in all of these bands that weren't about diversity with regard to the diversity claim the key point is that the government mischaracterizes the issue the issue here is whether the president can cut off grants that are appropriated by congress because the president disagrees with an idea there is no case that the government cites and there is none that gave the president that authority all the cases they cite involve judge kristen as you pointed out congress creating a program either as a government speak or to fund private messages none involved this situation in fact if you look at the cases that the government cites they're very much support exactly our position look for example in nea versus finley which the government quotes and relies on if you look at 524 us at 587 it says quote the government cannot leverage its power towards subsidies into a penalty on disapproved viewpoints but look at reagan for taxation representation which the u.s is 548 this case would be different if congress were to discriminate invidiously in the subsidies in such a way as to aim at the suppression of dangerous ideas now i would go to the enabling that sorry dean chemerinsky does the enabling statute prohibit any age from canceling any dei related grant i'm sorry i didn't hear the question does the enabling statute prohibit any age from canceling any dei related grant i think your argument is that the dei or the enabling statute requires it you know does not because it talks about sort of diversity as a as a premise or priority or principle of these grants that by usurping that authority and doing and in fact terminating these grants because they're related to dei that's improper but my question is does the enabling statute mean that that they can't cancel any that any age can cancel any dei related grant the statute doesn't empower the president to cancel grants more important i think directly answer your question if you look at 20 united states code section 956 sub a it specifically requires the national endowment of the humanities to consider diversity in awarding grants so in this instance with the president on this point i think things are getting conflated here because judge desai is asking about the types of programs that they do or do not have to fund and the provision you're speaking to is a directive from congress that when they decide which grants are going to be given right then they are to it uses the word shall shall consider basically dei is my paraphrase but what about the other the question really goes to are they required to fund everything that's in the drop down list that the that the director is authorized to fund or would they be permitted to terminate any one of those subject matters now i understand the question better of course the government can terminate grants for non-performance and of course the government in awarding grants can choose among them of what they believe thus fulfills the statutory goal but what's different here is the president is terminating grants in violation of the statutory goal and here i would quote something that judge desai referred to and it comes from 90 federal register 863 this is where the president stated the goal it is quote to combat and quote end quote the dangerous demeaning in immoral dei speech that is targeting disfavored viewpoints and that's exactly what the supreme court said in nea versus finley or reading versus taxation opposition congress can't do and i'd also mention it hasn't come up yet this court's decision in koala versus and here i direct you to 931 f third at 898 this court said the government can violate the first amendment by withholding benefits with censorious purpose and that's why the district court rightly included here that this is a quintessential example of viewpoint discrimination i follow up on those cases please you invoke rosenberger and a whole line of cases um that stand for the proposition there's a lot of cases that stand for the proposition that if the government chooses to subsidize speech including finley by the way but if the government chooses to open a forum then they cannot discriminate on the basis of viewpoint and i don't i don't hear the government pushing back on that it did seem to me though that you're relying on some older cases finley in particular both sides cite finley um and regan um certainly for this idea and uh so i'm i'm want to call your attention to something the government raised which is i think what he what opposing counsel argues is that those many many cases that have to do with limited public forum i think he's setting aside because the plaintiffs haven't argued a limited public forum here it's a different um uh rubric i think um and it is notable and i wonder about you're going all the way back to you know to finley i'm not saying these are outdated concepts because the general idea about not discriminating against viewpoints certainly flows through rosenberger and on to present day but if i mean to the extent that you're relying on regan and finley and there's i think those predate this framework so my question is why is it the plaintiffs haven't advanced a limited public forum and what's the appropriate framework that the district court was to have used here your honor i'll get back to what i said a moment ago and that's that congress can create a program where congress has the government speaking or congress can fund private speech in a particular direction that's what the supreme court said there's no service corporation versus velasquez this involves the question can the president terminate grants because the president wants to censor a particular viewpoint and that has been disfavored this court disfavors in the guala versus cosa case and there is nothing since nea versus finley nothing since reading for that has ever called that into question i agree i don't think there is but i do think it's notable and i'm not sure if this is what the government meant but it seems to me that he's setting aside opposing counsel will have a chance to speak to this but that he's setting aside quite a long line of case law because the plaintiffs haven't expressly argued a limited public forum i don't know if you think that matters and i and i'm not sure why you didn't argue a limited public forum but could you fill us in here on your view of this it wouldn't add anything it wouldn't change the result the supreme court has said for a limited public forum the government can't engage in viewpoint discrimination the supreme court said that in christian legal society versus martinez the supreme court said it earlier in perry educational association versus perry labor so if you wish to characterize the funding as a limited public forum you still get to the government has to be viewpoint neutral and here the government is being anything but viewpoint neutral so yes we could advance that as the framework but it would get you to the exact same place in the same conclusion i think oh forgive me for interrupting go right ahead please well this goes back to um whether this is viewpoint discrimination and so i look at and i see some daylight i'm not sure if i'm right to do this i've asked both both lawyers this question is there daylight between dei as a program could the government say we're not going to fund dei program officers anymore as an example and dei um used more broadly as it is used in the executive orders and i and i'm and i i go to the dictionary definitions and it seems to me that dei is known as and is used as an inherently directional idea because it's diversity equity and inclusion and it is defined by websters as i as i indicated earlier and i can paraphrase now um is that it recognizes a group of of people who have been historically excluded and and the viewpoint is that that is unfortunate not to be stopped um basically uh and i and i know if you see any daylight between dei as a viewpoint and dei as a program yes of course there's that possible daylight but given what i read to you from the federal register that the goal of the government is to end quote demeaning and immoral dei speech it's the government that has put this in the speech context by its very own words and it's the government that's blurring the between di speech and di programs by as judges i pointed out just randomly cutting off anything that uses certain keywords it is about right so doesn't that go to not to the executive orders by the president so much but how they were implemented because it seems to me that it's the implementation that terminated these grants and you're referring to internal documents that really at the agency level that reflect this viewpoint i think i interrupted you again i'm sorry but could you go to should we be looking to the executive orders or we should be should we be looking at the agency level you should be looking at both your honor because the government lawyer said to you earlier in this argument that the agency actions were to implement president trump's executive order and indeed when you look at what the agency did cutting off anything that used words like diversity it was all about trying to eliminate an idea and a message and so the distinction that could exist in theory between the program and the speech isn't followed by the president or by the agencies which would train out what the president was doing or the epa the uh at the agency level there is excuse me i think you're frozen oh we can hear you now we're able i can hear you we're able to hear my answer to your question i'm sorry i'm sorry could you repeat that oh sure we were able to hear my answer to your question i could hear your answer to my question could my colleagues yes yes okay judge jose i don't i don't have anything right now judge christine thank you okay were you able to hear it yes answer okay i think we're i think we're all caught up yeah i'll simply conclude it by saying your honor that when you balance the equities in this case as i said at the outset there is tremendous irreparable injury to the researchers whose grants are cut off with regard to the federal government this is spending money as congress specifically intended and if the federal government doesn't get the money back there are statutes and regulations that allow it to do so thank you for your argument yeah we're going to put a couple more minutes please two more minutes on the clock for the government to respond because we took up some of your time uh with our many questions i appreciate that your honor um why don't i start with the balance of harms because that's where council uh left off i think the balance of harms here is controlled by department of education it's the same way if they win at the end of the case they can get the money if we win at the end of the case we don't think we can get the money back and i don't think they can promise that we can get the money back i'm not saying there's no harm to them in the meanwhile i'm sure there is just as there was to the schools in the department of education we're getting their funds but uh at the end of the day they can get the money and we can't get the money later and they say can i ask you on this point isn't there a countervailing public harm when we get to the last kin factor about interrupted if because the government i'm sorry the public has invested hundreds of millions of dollars in some of these grants and the question i think the district court grappled with is some of it could be wasted if they're interrupted now how do we balance that at it in at the irreparable harm stage i think your honor the balance is broken by the executive prerogative to decide how to spend federal money and council said well it's no harm to the government because congress said to spend the money yes but the executive gets to decide on what to spend the money that is the discretion that the statutes give the executive branch and that that is the discretion is being taken away from us by this order like it was in the department of education so that's the balance of harms you know on the first amendment i'll just say i agree with judge judge christian with your question yes in a limited public forum uh there is there are limits on viewpoint discrimination they did not argue that this was a limited public forum the district court did not find this was limited public forum and that's because it's not a limited public forum a limited public forum is when the government invites everyone in to speak and then tries to selectively pull it back for certain viewpoints but it's pretty well established that when you have a selective program like this where the government is always reviewing the content of the grants before it makes any decisions about what to fund that is not a public forum that is the government deciding what to support and what not to support i'm going to ask you then to speak to finley because you invoke it and to reagan which predate this the sort of the rubric of a limited public forum finley says it's been cited by both parties even in the provision of subsidies the government may not aim at the suppression of dangerous ideas it also says the first amendment clearly applies in the federal subsidy context and um and if a study were manipulated to have a coercive effect relief may be appropriate could you please speak to that because though that case and and reagan upon which it relies relies does not rely upon a limited public forum context and i want to make sure i get the government's response to this please yeah absolutely right your honor i understand that language to refer to the situation that the supreme court later addressed in usaid where you are leveraging your subsidies or grants to influence speech outside the context of the program that is the type of suppression you're using as using the subsidy to not to just support what you want to support and not support what you don't but to influence what the people do on their own time and dime that you cannot do under usaid and i think that's the type of uh of censorship uh that the supreme court was alluding to in the earlier cases it was dicked on the earlier cases but usaid actually is the most recent supreme court that draws this line and i think we're clearly on the right side um i'd like to say a word about the apa issues uh you're way over time at this point so please wrap up quickly okay i'll try to be very brief your honor um council vote community legal services the difference between this case and community legal services is that there the plaintiffs were saying they had statutory and regulatory rights to have this program funded there was independent of a contract they said they had uh particular rights under statute and regulation here we have not made the tucker act argument with respect to the first amendment claim we are making it with respect to the apa arbitrary and capricious claim which does not confer an independent substantive right if it did it would completely swallow the rule and it would not explain department of education versus california which council was not able uh to to distinguish aside from the privity point which uh i'll just point the court to the two cases we cited on page 15 of our uh of our motion where the supreme court said if a specific statute says only a can sue and not be reading the apa to allow b to sue would undermine the purpose of that channeling scheme the same thing uh goes here i'm happy to address any questions but oh can i just mention one thing it's not really an argument but i just want the court to be aware because uh the nih case that is cited um we did file a request for supreme court review of the nih to be briefed by monday so if the court were inclined to wait um you know we're not going to we're aware of the status of the briefing we're aware of the status of the briefing thank you counsel but you're um now five minutes in uh so i'll uh wrap it up there unless either one of my colleagues has any additional questions no all right thank you both uh so very much for this argument we'll take it the matter under advisement and get a decision just as soon as we can we'll be in recess here you hear you all persons having had business with the honorable the united states court of appeals for the ninth circuit will now depart for this court for this session now stands adjourned
judges: PAEZ, CHRISTEN, DESAI